IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| DOROTHY COWAN, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:07cv779-MHT |
| | ) | (WO) |
| JACKSON HOSPITAL & CLINIC, INC., | ) | |
| | ) | |
|    Defendant. | ) | |

## OPINION

Relying on Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 1981a, 2000e through 2000e-17, plaintiff Dorothy Cowan, an African-American, charges her former employer of more than 17 years, defendant Jackson Hospital & Clinic, Inc., with illegal retaliation and constructive discharge. Jurisdiction is proper pursuant to 42 U.S.C. § 2000e-5(f)(3). Before the court is Jackson Hospital's motion for summary judgment which will be granted for the reasons outlined below.

I.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

II.

The facts giving rise to this litigation, viewed in the light most favorable to Cowan, are as follows.

October 24, 1988: Jackson Hospital hired Cowan to stock items for its central-supply unit.

Circa 1996: Cowan became a clerk in the hospital's bed-control unit, where she helped assign newly admitted patients to available beds.

<u>December 29, 1998</u>: Cowan became the training coordinator for the bed-control unit.

<u>August 2005</u>: David Jones was hired as director of the registration department and served as Cowan's supervisor.

<u>June 21, 2006</u>: Jones led a department meeting and used demonstrative tools that Cowan found racially offensive. Specifically, he used three 18-inch toy monkeys and one 12-inch gorilla to demonstrate a point about employees in the office who harbored negative attitudes. The monkeys were labeled with the names "Fabulous," "Friendly," and "Smiley;" in color, the monkeys were yellow, green and purple. Jones called the gorilla, which was black, the "bully." While the precise details of the meeting are not in the record, at some point during the presentation, Jones placed the monkeys around the necks of two black employees and one white employee. Jones then attempted to give another black employee the toy gorilla, which the employee refused to accept. In response, Jones brandished a stun gun and

told employees that if they did not exhibit better cooperation, he would use it. Twelve of the 16 employees present at the meeting were black. Jones is white.

June 22: Cowan submitted two complaints, by email, to the hospital's human resources department. She expressed displeasure with Jones's demonstration. She stated that, in a department that she believed was over 90% black, Jones's actions were offensive, frightening, and unprofessional.

Also by this date, Cowan had obtained the title bed-control supervisor.

Mid-November: Terri Lowery, a consultant retained by Jackson Hospital to improve efficiency, and Cynthia Dixon, the chief nursing officer, relocated the bed-control unit department from a third-floor section of the building to a fifth-floor section. Under the restructuring, Dixon became Cowan's new supervisor; Jones no longer had supervisory authority over Cowan.

Cowan was shown the new space prior to the relocation. The new office was shared with other members of the bed-control unit and lacked windows. Cowan informed Dixon that she did not object to the new location, so long as the door between her new office and the hallway remained open; Cowan suffers from claustrophobia.

<u>November 29</u>: Cowan filed a formal complaint with the Equal Employment Opportunity Commission (EEOC) based on Jones's conduct during the June 21 meeting; she also objected to the relocation of the bed-control unit, characterizing the act as retaliatory.

<u>January 21, 2007</u>: Lowery entered Cowan's office and closed the door that linked the office to the hallway. Cowan informed Lowery that she had been promised that the door would remain open and that she was having difficulty breathing. Lowery insisted that the door remain closed, both that day and at all times in the future.

<u>January 22 through February 20</u>: Cowan went on medical leave; she was diagnosed with hypertension, severe headaches, post-traumatic stress, and insomnia.

<u>February 26</u>: Lowery provided Cowan with a copy of a memorandum that had been circulated in Cowan's absence. According to the memorandum, all staff in various units, including the bed-control unit, would report directly to Lowery, rather than to different unit supervisors such as Cowan. This change, according to Cowan, demoted her from a bed-control supervisor to a bed-control clerk. The same memorandum read that "No overtime is allowed unless pre-approved" by Lowery.

<u>March 23</u>: Cowan submitted a resignation letter to Lowery. The letter stated that, "Since my return from sick leave I have not been given the opportunity to work in Bed Control." More generally, the letter stated that Cowan's employment had become strained by "confusion and rudeness" and that her work environment served as "the foundation of [her] recent medical problems".

**August 29**: Cowan filed this federal lawsuit.

## III.

### A. Retaliation Claim

Cowan's Title VII retaliation claim is governed by the familiar standard set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-03 (1973). In order to survive summary judgment, Cowan must first set forth a prima-facie case of illegal retaliation, and, once satisfied, a presumption of retaliation arises, with the burden then shifting to Jackson Hospital to rebut the presumption by articulating a legitimate, non-retaliatory reason for its employment action. <u>See</u> <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1024 (11th Cir. 2000). Jackson Hospital has the burden of production, not of persuasion, and thus does not have to persuade the court that it was actually motivated by the reason advanced. <u>See</u> <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 253-55 (1981).

Once Jackson Hospital satisfies this burden of production, the presumption of retaliation is eliminated, and Cowan must come forward with evidence, including the previously produced evidence establishing the prima-facie case, sufficient to permit a reasonable factfinder to conclude that the employment action taken by Jackson Hospital was retaliatory. Chapman, 229 F.3d at 1024. Cowan may meet this burden by persuading the court that a retaliatory reason more than likely motivated Jackson Hospital or by demonstrating that Jackson Hospital's proffered reason for its employment decision is not worthy of belief. Burdine, 450 U.S. at 256.

As an initial matter, Jackson Hospital argues that this court should not address the merits of Cowan's retaliation claim because the retaliation that she identifies occurred both after she filed her complaint with human resources and after she filed an EEOC complaint and, therefore, was not enumerated in the EEOC

complaint. Put another way, Jackson Hospital argues that Cowan has not exhausted this claim.

In Gupta v. East Texas State University, 654 F.2d 411 (5th Cir. Aug. 28, 1981), the former Fifth Circuit Court of Appeals confronted and rejected the argument Jackson Hospital now posits. Noting that "[i]t is the nature of retaliation claims that they arise after the filing of the EEOC charge," id. at 414, the court stated "that it is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge." Id. Any other result, the court reasoned, would "erect a needless procedural barrier to the private claimant under Title VII, especially since the EEOC relies largely upon the private lawsuit to obtain the goals of Title VII." Id. Following binding precedent, this court will not erect such a barrier here. See Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the

former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Under Title VII, an employee is protected from retaliation if she "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

To demonstrate a prima-facie case of retaliation, Cowan must show that: (1) she was engaged in statutorily protected activity under Title VII; (2) she suffered an adverse-employment action; and (3) there is a causal connection between the protected conduct and the adverse-employment action. Brochu v. City of Riviera Beach, 304 F.3d 1144, 1155 (11th Cir. 2002); Parris v. Miami Herald Publ'g Co., 216 F.3d 1298, 1301 (11th Cir. 2000).

Jackson Hospital does not dispute that Cowan engaged in protected activities by reporting Jones's conduct to human resources in June 2006 and by filing an EEOC

complaint in November 2006. The first element has been established.

The second element, however, is a point of contention. The Supreme Court has held that, in order to satisfy the second element, an employee must show that the adverse-employment action might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 68 (2006).

Here, Cowan alleges that, after she had been relocated to a windowless office, Dixon and Lowery refused to honor a promise to accommodate her claustrophobia by keeping the door to the office open. For most employees, this likely would not qualify as an adverse-employment action under Title VII's retaliation provision. However, the inquiry mandated by Burlington Northern is highly context-specific. Id. (because "the significance of any given act of retaliation will often depend on the particular circumstances" of a case, the

"legal standard speaks in general terms rather than specific prohibited acts").  The Court noted, for example, that while changing an employee's schedule may generally have no material impact, such a change could be enough to dissuade a young mother caring for a school-aged disabled child from reporting a defendant's illegal, discriminatory conduct.  Similarly, although the denial of a request to keep an office door open might not generally be considered an adverse-employment action, such denial to a claustrophobic employee could plausibly dissuade her from reporting an employer's discriminatory actions, for such denial could render her working conditions physically intolerable.  In this case, because she was claustrophobic, Cowan had gained an assurance that the door to her shared, windowless office would remain open.  When the door was closed, she pleaded with Lowery to open it; she informed Lowery that she had considerable difficulty breathing when the door was closed, but Lowery did not relent.

Next, Cowan observes that Jackson Hospital changed her title from bed-count supervisor to bed-count clerk, and in so doing, stripped her of her supervisory authority and the prestige that went with it. See Burlington Northern, 548 U.S. at 71 (noting that a change in plaintiff's duties that carries with it a loss of prestige is relevant to finding adverse-employment action). In fact, bed-control clerk was a title Cowan held before she became a bed-control supervisor. Therefore, while Jackson Hospital did not change Cowan's base pay when it changed her title, the hospital still arguably changed both the appearance and substance of her job.

In addition, contemporaneous with Cowan's change in job title, Lowery made it more difficult for Cowan to receive overtime pay by requiring that any requests for overtime pay be pre-approved by Lowery; Cowan represents to the court that this move, in practice, eliminated overtime pay for her.

13

These are all actions for which it could be reasonably argued that a person in Cowan's position would be dissuaded from reporting an employer's discriminatory action.  However, this court need not definitively answer the question whether these actions, collectively or individually, qualify as adverse-employment actions under Title VII's retaliation provision, for Cowan's retaliation claim fails to satisfy the third element of her prima-facie case: she has not shown a causal connection between any of the above purportedly adverse-employment actions and the filing of her complaints with human resources or the filing of the EEOC complaint.

As outlined above, Cowan argues she suffered three retaliatory acts: first, Dixon refused to allow Cowan to keep her office door open; second, Dixon and Lowery demoted her; and, third, Dixon and Lowery altered her overtime pay.  As to Dixon, Cowan has failed to put forth any evidence that Dixon had any role in formulating

or implementing any of these adverse actions. Thus, the court will limit its focus to Lowery.

In assessing whether these acts were causally related to either Cowan's complaints to human resources or her EEOC complaint, each basis for her retaliation claim fails for the same fundamental reason: Cowan has failed to establish that Lowery knew that she had complained about perceived discrimination. Indeed, Cowan has not submitted evidence rebutting Lowery's sworn statement that she did not know Cowan had reported discrimination. Affidavit of Terri Lowery, (Doc. No. 14-6), 4 ("At no time during my involvement with Ms. Cowan or the House Office was I aware that Ms. Cowan had submitted either an internal grievance to hospital management or had filed an EEO charge/complaint concerning her employment at Jackson Hospital.") Because "[a] decision maker cannot have been motivated to retaliate by something unknown to [her]," Brungart v. BellSouth Telecomms. Inc., 231 F.3d 791, 799 (11th Cir. 2000), and because Cowan has not shown that

Lowery "was aware of the protected conduct at the time of the adverse employment action," her retaliation claim must fail.

### B. Constructive-Discharge Claim

Title VII bars impermissible conduct that alters the terms and conditions of employment. Baldwin v. Blue Cross/Blue Shield of Alabama, 480 F.3d 1287, 1300 (11th Cir. 2007). One way a plaintiff may establish an impermissible adverse-employment action is by demonstrating that, due to prohibited conduct, she was constructively discharged. Poole v. Country Club, 129 F.3d 551, 553 (11th Cir. 1997). To succeed in such a claim, the allegedly discriminatory conduct complained of must be "so intolerable that a reasonable person in her position would be compelled to resign." Morgan v. Ford, 6 F.3d 750, 755-56 (11th Cir. 1993) (citations omitted); see also Hill v. Winn-Dixie Stores, Inc., 934 F.2d 1518, 1527 (11th Cir. 1991).

16

Here, Cowan has alleged that her working conditions so exacerbated her health problems that she was forced to resign.  Cowan has not alleged, however, let alone established through evidence, that her deteriorating health conditions or resignation resulted from prohibited <u>discrimination</u> or <u>retaliation</u>.  Indeed, in her resignation letter, she provides the following reasons for her departure: Lowery's refusal to allow her to work in the bed-control unit after her return from sick-leave; and "confusion and rudeness" in the work place.  Neither of these reasons amounts to impermissible conduct on the part of Jackson Hospital or Lowery.

Title VII, the Supreme Court has cautioned, does not constitute "a general civility code for the American workplace."  <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 80 (1998).  Title VII, therefore, does not prohibit all constructive discharges, regardless as the nature of or motive behind the intolerable conditions that caused the discharge, that is, regardless as to

17

whether the intolerable conditions were caused by the type of discriminatory or retaliatory conduct that Title VII was intended to address. Because Cowan has failed to put forth evidence establishing that the conditions leading her compelled resignation were motivated, or any way connected, to the types of discrimination or retaliation Title VII addresses, her constructive-discharge claim must fail.

\*\*\*

For the foregoing reasons, Jackson Hospital's motion for summary judgment will be granted. An appropriate judgment will be entered in favor of Jackson Hospital and against Cowan.

DONE, this the 21st day of August, 2008.

    /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE